UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 18-00332-03 |
| VERSUS | JUDGE S. MAURICE HICKS, JR. |
| JEFFREY SCOTT HOLDER | MAGISTRATE JUDGE HORNSBY |

**MEMORANDUM RULING**

Before the Court is Petitioner Jeffrey Scott Holder's ("Holder") Motion for Compassionate Release (Record Document 112). Alternatively, he asks the Court to order the Bureau of Prisons ("BOP") to release him to home confinement. See Record Document 112-1 at 9. Holder also requests appointment of counsel. See Record Document 112 at 6. The Government has opposed Holder's motion. See Record Document 115. Holder filed a reply brief. See Record Document 118. For the reasons set forth below, Holder's Motion for Compassionate Release and his request for appointment of counsel are hereby **DENIED**.

**BACKGROUND**

On November 29, 2018, a Federal Grand Jury seated in the Western District of Louisiana, Shreveport Division, returned a seven-count Indictment against Holder and others, charging them with Conspiracy to Distribute Methamphetamine, Possession of Methamphetamine with Intent to Distribute, Possession of Firearm in Furtherance of Drug Trafficking, and Felon in Possession of Firearm. See Record Document 14. Holder was named in the Conspiracy to Distribute Methamphetamine count and the substantive count of Possession of Methamphetamine with Intent to Distribute. See id.

On July 2, 2019, Holder entered a plea of guilty to Conspiracy to Distribute Methamphetamine, in violation of 21 U.S.C. 846, with a mandatory minimum of 10 years

to life. See Record Documents 62 & 64. He was subsequently sentenced to serve a term of 115 months imprisonment with a term of supervised release of 5 years to follow. See Record Documents 89 & 90.

The Court adopted the factual findings of the Probation Office as contained in the Presentence Report ("PSR") and its addendum. See Record Document 89. The facts as established in the PSR were between August and October 2018, Drug Enforcement Administration agents interviewed multiple cooperating sources who indicated that Holder and others were distributors of methamphetamine in the Caddo Parish area. See Record Document 98 at ¶ 8. On October 23, 2018, a Desoto Parish sheriff deputy conducted a probable cause traffic stop and identified the driver as Holder. See id. Holder had a suspended driver's license. When the deputy asked Holder if he had anything illegal in the vehicle, he began to sweat while speaking. See id. The deputy asked for consent to search the vehicle which Holder denied. See id. The deputy then requested a K-9 officer, who responded to the scene with a K-9 that alerted on the vehicle. See id. A search was conducted which led to a black bag on the back floorboard of the vehicle which contained 122.69 net grams of actual methamphetamine. See id. The suspected methamphetamine was field tested yielding a positive result. See id.

Holder is presently serving his sentence at Beaumont Medium FCI. His projected release date is January 19, 2027.

## LAW AND ANALYSIS

**I.     Appointment of Counsel**

There is no constitutional right to appointed counsel in post-conviction proceedings. See Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S.Ct. 1990, 1993 (1987). In relation to motions filed under 18 U.S.C. § 3582(c)(2) motions, which are

analogous to compassionate release motions pursuant to 18 U.S.C. § 3582(c)(1)(A)(i) like Holder's, "the Fifth Circuit has held that defendants have no statutory or constitutional right to counsel." United States v. Joseph, No. 15-307, 2020 WL 3128845, at *1 (E.D. La. June 12, 2020) (citing United States v. Whitebird, 55 F.3d 1007, 1011 (5th Cir. 1995). "Although a defendant in a § 3582(c) motion does not have a statutory or constitutional right to appointment of counsel, the Court may appoint counsel in the interest of justice." United States v. Mogan, No. 14-040, 2020 WL 2558216, at *4 n.29 (E.D. La. May 20, 2020). The interests of justice do not require that counsel be appointed where a "defendant's motion does not involve complicated or unresolved issues" or where a defendant proves capable of representing himself *pro se*. See Joseph, 2020 WL 3128845, at *2. Here, the interests of justice do not require that the Court appoint counsel for Holder. The motion is not complex, and Holder demonstrated in his motion and supporting memoranda that he is fully capable of representing himself on the matter *pro se*. Holder's request for appointment of counsel is **DENIED**.

II.     **Compassionate Release**

Holder seeks compassionate release and/or reduction in sentence due to his previous contraction of COVID-19 in January 2021, fear of contracting COVID-19 again, a shoulder injury dating back to 1984, gastroesophageal reflux disease, a body mass index of 30.1, asthmatic shortness of breath due to "long COVID," presbyopia, and unspecified depressive disorder. See Record Document 112-1 at 2-3. He also seeks release due to "particular caregiving responsibilities of his mother and [minor] daughter." Id. at 4. Holder submits that his combined serious medical conditions and his family circumstances present extraordinary and compelling circumstances warranting a modification of sentence.

Generally, courts cannot modify sentences once imposed. See Freeman v. United States, 564 U.S. 522, 526, 131 S.Ct. 522, 2690 (2011); see also 18 U.S.C. § 3582(c). However, this rule is subject to some exceptions. A court may reduce a term of imprisonment upon finding "extraordinary and compelling" circumstances and consideration of the factors set forth in 18 U.S.C. § 3553(a) ("Section 3553(a) factors"). 18 U.S.C. § 3582(c)(1)(A); United States v. Thompson, 984 F.3d 431, 433 (5th Cir. 2021).[1] Should a court find no "extraordinary or compelling reason[ ]" that warrants a reduction in sentence, the court may end its analysis there, but it is not foreclosed from weighing the Section 3553(a) factors to determine whether to grant or deny a defendant's release. See id.

If a court does accept the "extraordinary and compelling reasons" provided in the motion and duly examines the Section 3553(a) factors, then the defendant's sentence should be reduced in accordance with "applicable policy statements issued by the [United States] Sentencing Commission." 18 U.S.C.§ 3582(c)(2). The policy statement that specifically references Section 3582 is United States Sentencing Guidelines § 1B1.13 ("Section 1B1.13" or the "Guidelines"). It provides that "[u]pon motion of the Director of the [BOP or the defendant]," a court may reduce the term of imprisonment after considering the Section 3553(a) factors if the court finds that "extraordinary and compelling reasons warrant the reduction[;] the defendant is not a danger to the safety of any other person or to the community[; and] the reduction is consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (2)-(3). "In general, the defendant has the burden

---

[1] Before filing a compassionate release motion, prisoners must exhaust their administrative remedies. Here, there is no dispute that Holder has exhausted his administrative remedies and the Court will proceed to the merits. See Record Document 115 at 5.

to show circumstances meeting the test for compassionate release." United States v. Stowe, No. H-11-803(1), 2019 WL 4673725 at *2 (S.D. Tex. Sept. 25, 2019); see also United States v. Ennis, No. EP-02-CR-1430-PRM-1, 2020 WL 2513109, at *4 (W.D. Tex. May 14, 2020) ("[T]he defendant has the burden to show circumstances meeting the test for compassionate release."); United States v. Wright, No. 16-214-04, 2020 WL 1976828, at *6 (W.D. La. Apr. 24, 2020) (Petitioner has the "burden of showing the necessary circumstances, or a combination of circumstances, that would warrant relief under the compassionate release statute.").

Although not binding or dispositive, Section 1B1.13's policy statement in the Guidelines includes commentary specifying the types of medical conditions that could qualify as extraordinary and compelling reasons for sentence reduction. See Thompson, 984 F.3d at 433. First, this standard is met if the defendant is "suffering from a terminal illness[, e.g.,] metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, [or] advanced dementia." U.S.S.G. § 1B1.13, cmt. n.1(A)(i). Second, a defendant also qualifies under this standard if he or she: (1) suffers from a serious physical or medical condition, (2) suffers from a serious functional or cognitive impairment, or (3) experiences deteriorating physical or mental health because of the aging process, any of which substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility, and from which he or she is not expected to recover. See id., cmt. n.1(A)(ii).  The commentary also sets forth other conditions and characteristics that qualify as "extraordinary and compelling reasons," including some related to the defendant's age and familial circumstances. See id., cmt. n.1(B)-(C). Reductions may be appropriate for defendants who are 70 years old and who have served at least 30 years in prison pursuant to a sentence imposed under 18 U.S.C.

§ 3559(c). See § 1B1.13(1)(B). The family circumstances courts may consider as an adequate reason for a sentence reduction are limited to the need to care for a defendant's minor children or a spouse or registered partner when no other caregiver is available. See § 1B1.13, cmt. n.1(C). Finally, the commentary recognizes the possibility that BOP could identify other grounds that amount to extraordinary and compelling reasons for sentence modification. See id., cmt. n.1(D).

Following the passage of the First Step Act of 2018, BOP's director amended its regulations and issued BOP Program Statement 5050.50. The statement sets forth, in detail, BOP's definition of the circumstances that may support a request for compassionate release, which is limited to the same bases the Sentencing Commission identified: serious medical conditions, advanced age, and familial circumstances. Fed. Bur. of Prisons, Program Statement 5050.50 – Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g) (Jan. 17, 2019).

Holder's motion fails because his COVID-19 related concerns and medical conditions do not constitute extraordinary and compelling reasons under the compassionate release statute. First, Holder does not dispute that he has received the COVID-19 vaccine. Even considering his medical conditions, courts have denied compassionate release motions on this ground alone. See United States v. Hanner, No. 1:07-cr-10028-01, 2023 WL 1590009, *3 (W.D. La. Jan. 11, 2023); United States v. Beltran, No. 6:16-4(SSSS)-4, 2021 WL 398491, at *3 (S.D. Tex. Feb. 1, 2021); United States v. Isidachomen, No. 3:16-cr-0240-B-4, 2021 WL 243458, at *3 (N.D. Tex. Jan, 25, 2021). Moreover, the Fifth Circuit has recognized that a general fear of contracting COVID-19 in prison is not an extraordinary and compelling reason warranting relief. See

Thompson, 984 F.3d at 433-34. The availability of a safe and effective vaccine lessens any argument that the BOP is incapable of managing any COVID-19 contagion such that compassionate release is warranted in this instance.

Holder also alleges that his role as the only available caregiver for his mother who has temporary custody of his minor child warrants his release. Yet, the family circumstances courts may consider as an adequate reason for a sentence reduction are limited to the need to care for a defendant's minor children, not his parent, when no other caregiver is available. See § 1B1.13, cmt. n.1(C). Holder has failed to present specific evidence demonstrating that he is the only person who could care for his minor child. In fact, he references individuals, cousins, and/or nieces who have cared for his daughter when his mother has been sick. See Record Document 112-2 at 8-11. The availability, not the feasibility, of that care for the minor child is what this Court must consider. Additionally, Holder has not explained how he will care for his minor child – or his mother – while also working full time at a job which he says is waiting for him.

Notwithstanding, even if this Court were to find that Holder had extraordinary and compelling reasons for compassionate release, granting such release in this case would not comport with the factors enumerated in Section 3553(a). See 18 U.S.C. § 3582(c)(1)(A). The facts and circumstances of the offense of conviction, i.e., conspiracy to distribute methamphetamine, and Holder's history and characteristics weigh heavily against release in this case. The PSR establishes that Holder has an extensive criminal history. See Record Document 98 at ¶¶ 26-57, 60-83. He has eight prior adult felonies and twenty-four adult misdemeanor convictions. See id. Holder also has a record of continued criminal conduct while under supervision. See id. at ¶ 126. His criminal history shows no respect for the law. The BOP has also identified Holder as having "a high

PATTERN risk score for recidivism." Record Document 115-1 at 2. It is this Court's belief that a reduced sentence in this case simply would not be just punishment, would not reflect the seriousness of the offense, would not promote respect for the law, would not afford adequate deterrence to criminal conduct, and would not protect the public from further crimes of Holder. A reduced sentence would also create disparity with respect to defendants with similar criminal records who have engaged in similar criminal conduct.

### III. Home Confinement

Title 18, United States Code, Section 3624(c)(2) provides that the BOP's authority to release a prisoner "may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." Under the Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), Pub. Law 116-136, enacted on March 27, 2020, "if the Attorney General finds that emergency conditions will materially affect" BOP functioning, the BOP Director may "lengthen the maximum amount of time for which [he] is authorized to place a prisoner in home confinement" under Section 3624(c)(2). Pub. L. 116-136, § 12003(b)(2). On April 3, 2020, the Attorney General found such conditions existed, stating "emergency conditions [created by COVID-19] are materially affecting the functioning" of the BOP. See Memorandum from Attorney General William Barr to Director of Bureau of Prisons, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19 (April 3, 2020), available at https://www.justice.gov/file/ 1266661/download (last visited 6/2/2021). Thus, the BOP director now has the authority to grant home confinement to a larger group of prisoners. See id.

Section 3621(b) provides that the BOP "shall designate the place of the prisoner's imprisonment." 18 U.S.C. § 3621(b). The BOP considers bed availability, the prisoner's

security designation, his programmatic needs, his mental and medical health needs, his faith-based needs, recommendations of the sentencing court, other security concerns of the BOP, and the proximity to his primary residence. See id. "A designation of a place of imprisonment under [Section 3621] is not reviewable by any court." Id. The Fifth Circuit has followed this statutory directive, stating "a prisoner has no liberty interest or right to be housed in any particular facility, and the BOP has wide discretion in designating the place of a prisoner's imprisonment." Siebert v. Chandler, 586 Fed.Appx. 188, 189 (5th Cir. 2014), citing Olim v. Wakinekona, 461 U.S. 238, 244-245, 103 S.Ct. 1741, 1745 (1983) and 18 U.S.C. § 3621(b).

The CARES Act does in fact grant broad discretion to the BOP regarding release to home confinement. However, such decisions still remain exclusively with the BOP. Nothing in the CARES Act changed the statutory authority granted in Section 3621(b) and this Court still lacks the power to order home confinement under the CARES Act. See generally United States v. Williams, No. CR 2:12-539, 2020 WL 1940836, at *2 (S.D. Tex. Apr. 22, 2020) ("While the CARES Act allows the BOP Director to lengthen the amount of time a prisoner may be placed in home confinement, nothing in the Act grants individual prisoners the right to serve the remainder of their sentence in home confinement. The BOP still has exclusive authority to determine where a prisoner is housed. 18 U.S.C. § 3621(B)."); United States v. Read-Forbes, 2020 WL 1888856, at *5 (D. Kan. Apr. 16, 2020) ("While the CARES Act gives the BOP broad discretion to expand the use of home confinement during the COVID-19 pandemic, the Court lacks jurisdiction to order home detention under this provision."); United States v. Engleson, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (while court can recommend, ultimate decision whether to release inmate to home confinement rests with BOP); United States v. Hembry, 2020 WL

1821930, at *2 (N.D. Cal. Apr. 10, 2020); United States v. Carter, 2020 WL 1808288, at *2 (S.D. Ind. Apr. 9, 2020); United States v. Garza, 2020 WL 1485782, at *1 (S.D. Cal. Mar. 27, 2020).  Holder's request for early release to home confinement is **DENIED**.

## CONCLUSION

Based on the foregoing reasons, Holder's Motion for Compassionate Release (Record Document 112) – including his requests for appointment of counsel and release to home confinement – be and is hereby **DENIED**.

An order consistent with the terms of the instant Memorandum Ruling shall issue herewith.

**THUS DONE AND SIGNED**, in Shreveport, Louisiana, this 4th day of April, 2023.

_____
S. Maurice Hicks, Jr.
United States District Judge